UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CARMICHAEL LODGE NO. 2103,
BENEVOLENT AND PROTECTIVE
ORDER OF ELKS OF THE UNITED
STATES OF AMERICA, a
California corporation,

                                NO. CIV. S-07-2665 LKK/GGH

      Plaintiff,

  v.

                                 O R D E R

RONALD L. LEONARD dba RV TRAVEL
GUIDES, a California company,
and DOES 1 through 50,
inclusive,

      Defendants.
                            /

      This action pertains to a copyright dispute over travel guides between plaintiff and counterdefendant Carmichael Lodge No. 2103 Benevolent and Protective Order of Elks of the United States of America ("Carmichael Elks") and defendant and counterclaimant Ronald Leonard d/b/a RV Travel Guides. Leonard has filed a counterclaim against Carmichael Lodge asserting, in addition to copyright infringement, claims for false advertising under the

1

Lanham Act, unfair business practices under the California Unfair Competition Law, and libel per se. Pending before the court is Carmichael Lodge's motion to dismiss the non-copyright-related counterclaims. For the reasons explained below, the motion is denied.

## I. Background[1]

Carmichael Elks is a fraternal organization. Compl. ¶ 6. Over twenty years ago, Carmichael Elks members Ira and Barbara David started a series of travel guides. Id. ¶ 9. The travel guides contain information regarding Elks' lodges in several states, the hours of operation of the lodges, the availability of parking for recreational vehicles, and other similar information. Countercl. ¶ 6. In 1988, Carmichael Elks obtained copyright registrations for the first two volumes of these guides from Mr. and Mrs. David, claiming that Mr. and Mrs. David assigned their rights in those works to Carmichael Elks. Id. ¶ 7.

Ronald Leonard alleges that in 1998, he began updating and reformatting the information contained in the guides. Id. ¶ 8. After compiling and reformatting this information into updated guides, Leonard allegedly granted a license to Carmichael Elks to publish and sell them, although he did not receive any compensation for the license. Id. ¶ 9.

After a dispute arose between Leonard and Carmichael Elks,

---

[1] All material allegations are derived from the counterclaim. References to the complaint are made only for background information.

2

1 Leonard informed the Carmichael Elks in January 2007 that he was
2 terminating their license to sell the guides, effective March 31,
3 2007. Id. ¶ 10. Also in January 2007, Leonard applied for, and
4 ultimately received, copyright registrations for each of his guides
5 sold by Carmichael Elks. Countercl., Ex. A (copyright
6 registrations). In March 2007, Carmichael Lodge obtained a
7 copyright registration for the third volume of the travel guides,
8 listing Mr. and Mrs. David as the authors. Id. ¶ 11.

On December 5, 2007, Leonard allegedly learned that Carmichael
Elks had begun distributing a letter to other Elks' Lodge members
accusing Leonard of stealing the guides. Id. ¶ 13. Because the
letter is the crux of the claims at issue in the motion to dismiss,
it is reprinted in its entirety here:[2]

Dear Honored Member,

We write to clarify the misleading and incorrect
information that you may have recently received from Ron
Leonard regarding Travel Guide sales. Unfortunately, Mr.
Leonard has been selling our Elkdom Travel Guides I, II,
and III - for his personal profit - without Grand Lodge
Permission for several months now. The Guides sold by
Mr. Leonard are identified as Elk RV Guide I, II, III,
and IV. These Guides do not display the official Elks
logo on the cover and are absolutely not sanctioned by
the Grand Lodge. The Guides being offered by Mr.
Leonard, particularly all copyrights and corresponding
publication rights, belong to Carmichael California Elks

---

[2] "A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006). The letter satisfies those requirements here, as it is referenced in the counterclaim, Countercl. ¶ 13, is central to the second through fourth counterclaims, and Leonard does not dispute its accuracy.

3

> Lodge #2103 - not Mr. Leonard - and we intend to protect these materials with the full force of law.
>
> The Carmichael Elks Lodge has been publishing and distributing Elkdom Travel Guides I, II, and III for over 23 years - long before Mr. Leonard joined our Lodge and began assisting with Guide updates. Mr. Leonard formerly worked with the Carmichael Elks Lodge in helping to prepare updated Guides, but has now simply stolen these materials from our Lodge to sell for his very own profit. We ask that you discontinue purchasing Travel Guides I, II and III from Mr. Leonard and continue purchasing Elkdom Travel Guides I, II, and III from the Carmichael Elks, which has always used all sales proceeds for charity, not profit. Indeed, all profits from the sale of our Elkdom Travel Guides are deposited into a restricted account for annual disbursement to ENF, California Hawaii Elks Major Project and to local charities supported by the Carmichael Elks. Our Elkdom Travel Guides project is officially sanctioned by the Grand Lodge and the profits are used strictly for benevolent purposes - to help hundreds of people and organizations in this Country. Mr. Leonard's unauthorized sales efforts threaten to divert these benevolent funds for the profit of his company, RV Travel Guides, and we simply will not stand by and allow this to happen.
>
> We ask for your support. Please purchase Travel Guides I, II, and III exclusively from the Carmichael Elks so that we can continue to generate funds for the various benevolent recipients that we mentioned above. While the rights to Travel Guide IV are originally owned by the Carmichael Elks, our Lodge does not have Guide IV available in print at this time. However, we reiterate that any purchase from Mr. Leonard will not profit Elks Carmichael's benevolent causes - only Mr. Leonard's company.

Decl. of Pamela Bertani, Ex. D.

Leonard alleges four counterclaims, and the ones relevant here pertain to false advertising, unfair competition, and libel per se. In particular, Leonard points to the allegedly false and damaging statements made by Carmichael Elks including the claim that Leonard had "stolen" the travel guides (as stated in the letter reprinted above). Countercl. ¶ 21. In addition, Leonard alleges that

4

1  Carmichael Elks has falsely disparaged his product with the natural
2  result of tending to attract Leonard's customers.
3      Pending before the court is Carmichael Elks' motion to
4  dismiss, which argues, in short, that the letter is privileged, and
5  that Leonard has failed to set forth sufficient facts to establish
6  the claims at issue.

## II. Standard

In order to survive a motion to dismiss for failure to state a claim, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, -- U.S. --, 127 S. Ct. 1955, 1974 (2007). While a complaint need not plead "detailed factual allegations," the factual allegations it does include "must be enough to raise a right to relief above the speculative level." Id. at 1964-65.

The Supreme Court recently held that Federal Rule of Civil Procedure 8(a)(2) requires a "showing" that the plaintiff is entitled to relief, "rather than a blanket assertion" of entitlement to relief. Id. at 1965 n.3. Though such assertions may provide a defendant with the requisite "fair notice" of the nature of a plaintiff's claim, the Court opined that only factual allegations can clarify the "grounds" on which that claim rests. Id. "The pleading must contain something more. . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id. at 1965, quoting 5 C. Wright & A. Miller, Federal Practice and Procedure, § 1216, pp. 235-36 (3d

////

ed. 2004).[3]

On a motion to dismiss, the allegations of the complaint must be accepted as true. See Cruz v. Beto, 405 U.S. 319, 322 (1972). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. See Retail Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963). In general, the complaint is construed favorably to the pleader. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982). Nevertheless, the court does not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

### III. Analysis

**Privilege Under California Civil Code Section 47(b)**

**A. Legal Requirements**

Carmichael Elks' principal argument is that the letter at issue is privileged under California Civil Code section 47(b). That section states that: "[a] privileged publication . . . is one made . . . [i]n any (1) legislative proceeding, (2) judicial proceeding, [and] (3) in any other official proceeding authorized by law" (subject to certain exceptions not applicable here). Cal.

---

[3] The holding in Twombly explicitly abrogates the well established holding in Conley v. Gibson that, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46 (1957); Twombly, 127 S. Ct. at 1968.

Civ. Code § 47(b). "The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." Silberg v. Anderson, 50 Cal. 3d 205, 212 (1990). Application of privilege under section 47(b) to undisputed facts is a question of law. Rothman v. Johnson, 49 Cal. App. 4th 1134, 1139-40 (1996).

The purposes of the privilege are said to include "ensuring free access to the courts, promoting complete and truthful testimony, encouraging zealous advocacy, giving finality to judgments, and avoiding unending litigation." Silberg, 50 Cal. 3d at 214. In particular, the privilege is said to afford litigants and witnesses free access to courts "without the fear of being harassed subsequently by derivative tort actions." Id. at 213. The only tort not barred by the privilege is that of malicious prosecution. Id. at 216. "[T]he disallowance of derivative tort actions based on communications of participants in an earlier action necessarily results in some real injuries that go uncompensated. But . . . that is the 'price that is paid for witnesses who are free from intimidation by the possibility of civil liability for what they say.'" Id. at 218.[4]

The privilege encompasses not only testimony in court and

---

[4] It appears to this court that the breadth of the privilege far extends beyond the purposes which it is said to serve. Nonetheless, of course this court is bound by the holdings of the California Supreme Court on matters of California law.

7

1  statements made in pleadings, but also statements made prior to the
2  filing of a lawsuit, such as "demand letters and other
3  prelitigation communications by attorneys," Sharper Image Corp. v.
4  Target Corp., 425 F. Supp. 2d 1056, 1078 (N.D. Cal. 2006), whether
5  in preparation for anticipated litigation or to investigate the
6  feasability of filing a lawsuit, Hagberg v. Cal. Fed. Bank FSB, 32
7  Cal. 4th 350, 361 (2004). See also Rubin v. Green, 4 Cal. 4th
8  1187, 1194 (1993) (privilege extends to communications that have
9  some relation to anticipated litigation).

10   Such prelitigation communication, however, must be "made in
11  connection with a proposed litigation that is 'contemplated in good
12  faith and under serious consideration.'" Aronson v. Kinsella, 58
13  Cal. App. 4th 254, 262 (1997) (quoting Edwards v. Centex Real
14  Estate Corp., 53 Cal. App. 4th 15, 33 (1997)). This requirement
15  derives from the Restatement Second of Torts, which also notes that
16  "[t]he bare possibility that the proceeding might be instituted is
17  not to be used as a cloak to provide immunity for defamation when
18  the possibility is not seriously considered." Restatement Second
19  of Torts, section 586, comment e.

20   This requirement that there be "good faith" is narrow. It is
21  not a test for malice, nor a test for the "interests of justices"
22  -- both of which have previously been rejected by courts;[5] instead,

---

[5] This is a critical distinction. The substance of the communications at issue *can* be made in bad faith. See Kashian v. Harriman, 98 Cal. App. 4th 892, 912 (2002) ("If absolutely privileged, there is no liability even if the defamatory communication is made with actual malice."); see also Aronson, 58 Cal. App. 4th at 266 ("[T]he good faith, serious consideration of

8

the good faith requirement pertains only to the reasonable belief that litigation is likely to be commenced. Aronson, 58 Cal. App. 4th at 266. The requirement is simply another expression of one of the basic requirements for application of the privilege, namely, that the statements "have some connection or logical relation to the action." Id.

In evaluating whether a statement has such a connection or logical relation to the action, courts must first look at the subject matter of the statement. "It is the subject matter or context of the misstatement, not the isolated misstatement itself, which must control whether a communication has 'some connection or logical relation to the action.'" Sacramento Brewing Co. v. Desmond, Miller & Desmond, 75 Cal. App. 4th 1082, 1089-90 (1999) (quoting Silberg, 50 Cal. 3d at 212). "Otherwise, testimony by a witness could be shorn of its privilege where the witness misnames an unrelated person or business, resulting in defamation. In short, if the misstatement alone had to be logically related to the action, many misstatements -- which are, by definition, false -- would not be so related." Id. at 1090. Further, comparing the similarity of subject matter (between the statement and the action)

litigation test is not . . . a test for malice and it is not a variation of the 'interest of justice' test."). As I have observed in resolving questions of California law, this court "is bound by the pronouncement of the California Supreme Court and the opinions of the California Courts of Appeal are merely data for determining how the highest California court would rule . . . [but] in the absence of other evidence, the opinions of California courts of appeal on questions of California law cannot simply be ignored." Brewster v. County of Shasta, 112 F. Supp. 2d 1185, 1188 n.5 (E.D. Cal. 2000) (citations omitted).

9

does not require consideration of the falsity of the statement; "[a]nd it would be a poor privilege indeed that required the truth of the allegedly defamatory communication to be determined in order to determine the privilege's application." Id.[6]

That said, similarity of subject matter alone is not enough to show "some connection or logical relation to the action." In addition, the statement at issue must also have a "functional" connection to the contemplated lawsuit. Rothman, 49 Cal. App. 4th at 1146. "That is to say, the communicative act -- be it a document filed with the court, a letter between counsel or an oral statement -- must function as a necessary or useful step in the litigation process and must serve its purposes." Id. Thus, for example, a bank vice-president's statements to the press concerning the reasons the bank had discharged an employee was not covered by the privilege, even though the discharge was the subject of quasi-judicial proceedings before the NLRB. Id. (citing Washing v. Bank of America, 21 Cal. 2d 822 (1943)). Similarly, in Rothman, when the psychological evaluation of a minor boy who had accused Michael Jackson of wrongdoing was "leaked" to the press, statements made by Jackson's team at a press conference denouncing the evaluation and contending that the boy had made false accusations to extort money were held not to be privileged. 49 Cal. App. 4th at 1138-39. The court held that "[p]ublic mudslinging . . . is one of the kinds

---

[6] All of which seems somewhat besides the point in dealing with statements which are, as a practical matter, removed from the litigation.

10

of unregulated and harmful feuding that courts . . . exist to prevent." Id. at 1146.

**B. Application**

Here, the letter at issue raised several points. It stated that the guides belonged to Carmichael Lodge and that Leonard had stolen them. It proclaimed that the organization "intend[ed] to protect these materials with the full force of law" and "simply [would] not stand by and allow [Leonard's unauthorized sales] to happen." It also noted that the revenue generated from Carmichael Lodge's sales went to the organization (in contrast to Leonard's sales). As noted, the court must examine the subject matter of the letter as a whole, not "isolated [purported] misstatement[s]." Sacramento Brewing Co., 75 Cal. App. 4th at 1089.

Carmichael Lodge asserts that the four basic requirements of the privilege are satisfied. The letter was purportedly made in good faith anticipation of litigation (satisfying the first and fourth requirement), written by Carmichael Lodge (satisfying the second requirement), and achieved the objects of this litigation, such as injunctive relief, by helping to stop what Carmichael Lodge considers the unauthorized sale of its travel guides (satisfying the third requirement).

Leonard first responds that "statements made to injure another are not privileged," at least where the injury takes the form of anti-competitive conduct. Opp'n at 3. He relies principally on Meridian Project Systems, Inc. v. Hardin Construction Co., 404 F. Supp. 2d 1214, 1218 (E.D. Cal. 2005). There, the defendant brought

11

1  a counterclaim alleging that the plaintiff had interfered with
2  prospective economic advantage by meeting with potential customers.
3  Id. at 1218.  In that meeting, plaintiff allegedly told customers
4  about its copyright infringement suit against defendant, and
5  impliedly threatened customers with copyright infringement lawsuits
6  if they purchased defendant's product (software).  Id.  The court
7  held that the statements made during the meeting were not protected
8  by section 47(b) because they were "not a good faith effort to
9  forestall litigation, but merely an effort to discourage the
10 customers from purchasing [the other party's] product.  Such
11 anti-competitive conduct would not be privileged under § 47(b)."
12 Id. at 1223.
13     The holding that Leonard attempts to extract from Meridian
14 Systems -- that "statements made to injure another are not
15 privileged," Opp'n at 3 -- rests upon an erroneous interpretation
16 of the "good faith" requirement.  As noted earlier, the party
17 seeking to invoke the privilege must have a "good faith" belief
18 that litigation will be commenced -- not that the statement sought
19 to be protected must be made in "good faith" in a conventional
20 sense.  To the contrary, if the litigation privilege applies, then
21 the protection provided is absolute, even when a statement is made
22 with malice.  Kashian, 98 Cal. App. 4th at 912.  Plaintiff's
23 interpretation of the good faith requirement was expressly rejected
24 by the California Supreme Court in Silberg.  50 Cal. 3d at 218
25 (describing "interests of justice" test and rejecting it).
26     More closely aligned with the facts of this case is Aronson.

58 Cal. App. 4th at 254.  There, a consultant represented to his employer that he had previously established and financed two biotechnology companies.  Id. at 259.  The consultant's former employer, however, disagreed with that claim; the employer contended that it, not the consultant, had established and financed the companies.  Id.  The former employer then contacted the consultant's new employer informing it that "several statements and claims by [the consultant] . . . [we]re false and misleading."  Id.  Further, because the new employer had circulated the consultant's resume to other individuals, the former employer threatened legal action if the new employer did not contact these individuals and renounce the claims.  Although the consultant sued the former employer, the court held that the statements made by the former employer were privileged.

Here, the potential customers of the guides occupy the same role as the new employer in Aronson.  Just as the former employer "interfered" with the relationship between the consultant and the new employer, so too has Carmichael Lodge allegedly "interfered" with the relationship between Leonard and potential customers of the guides.  But, as noted above, any bad motive with respect to such interference is immaterial.  Instead, the relevant inquiry is whether the statements sought to be protected were connected to a reasonable belief that litigation was likely.  Here, just as the letter in Aronson reflected a good faith belief that litigation would ensue, and addressed the same subject matter as that of the contemplated litigation, so too does the Carmichael Elks letter

13

1  reflect a good faith belief that litigation would ensue (as,
2  obviously, it now has), and its subject matter is the same as that
3  of the current action.  See also Sacramento Brewing Co., 75 Cal.
4  App. 4th at 1089 ("The privilege should be denied only where it is
5  so palpably irrelevant to the subject matter of the action that no
6  reasonable person can doubt its irrelevancy.").

7       As noted above, however, similarity of subject matter does not
8  end the analysis.  Carmichael Lodge must also demonstrate a
9  "functional" connection to the action.  Importantly, it did not
10 simply send the letter to Leonard (which, if sent as a classic
11 demand letter, would clearly have been covered by the privilege)
12 but instead sent it to other Elks' Lodges.  In Washing and Rothman,
13 statements made to the media were deemed too far removed from the
14 purposes of litigation to have "some connection or logical relation
15 to the action."  As the court noted in Rothman, simple public
16 mudslinging is not protected by the privilege.  49 Cal. App. 4th
17 at 1146.  Aronson, too, for all its similarities to this case, is
18 similarly distinguishable in this respect, because the target of
19 the communication (the new employer) had also been threatened with
20 suit, and in that respect, the letter could have been viewed as a
21 simple prelitigation demand letter.

22      Here, the facts are slightly different.  While Carmichael
23 Lodge did not hold a general press conference, it did sent the
24 letter to other Elks' Lodges.  Countercl. ¶ 13.  In Rothman,
25 Michael Jackson had argued that the press conference, like the
26 anticipated defense in the expected lawsuit, was intended to

14

vindicate him publicly. The court rejected that argument because "[w]hile a person's motives for litigating a dispute may include a desire to be vindicated in the eyes of the world -- a result which the litigation may achieve -- this is not what is meant by the term 'objects of the litigation.'" Rothman, 49 Cal. App. 4th at 1147. Instead, "the 'objects of the litigation' for a plaintiff are to obtain a monetary recovery for damages or other relief." Id.

While "litigating to the press" does not accomplish any intrinsic object of litigation, here, Carmichael Lodge argues that its letter to other lodges *was* aimed at an object of this litigation, namely, to stop the purportedly unauthorized sale of travel guides.[7] If Carmichael Lodge prevails in the merits of its copyright claim against Leonard, it may be entitled to injunctive relief that would prevent Leonard's sale of the guides. Any entitlement to such relief, however, is in the hands of the court; the litigation privilege exists so that parties do not resort to self-help. Rothman, 49 Cal. App. 4th 1134, 1146 (1996). By the same logic employed by Carmichael Lodge, it could also simply take from Leonard the monetary damages that it believes it is owed.

The court also finds that the public interests animating the

---

[7] The letter seemed to state two reasons for not buying Leonard's guides: first, that the guides were the intellectual property of the Carmichael Elks, and second, that the guides published by Carmichael Elks would fund the organization. The first grounds is primarily at issue here, whereas the second grounds does not appear to undergird any of the claims at issue in this motion.

15

privilege (e.g., promoting truthful testimony, encouraging zealous advocacy, streamlining litigation) would not be advanced if the privilege were applied to the letter. Unlike a prelitigation demand letter, for example, Carmichael Lodge's letter is not an efficiency-saving device that might obviate the necessity of litigation altogether. Cf. Passman v. Torkan, 34 Cal. App. 4th 607, 615 (1995). Similarly, unlike a complaint made to a public official or agency, the letter does not help to resolve the dispute administratively. Cf. Ghafur v. Bernstein, 131 Cal. App. 4th 1230, 1235 (2005). In addition, while communications directed toward private parties such as investigatory interviews preparatory to a hearing are necessary for judicial or quasi-judicial proceedings to function, the same cannot be said for a letter to potential customers. Cf. Ascherman v. Natanson, 23 Cal. App. 3d 861, 866 (1972). See also eCash Techs., Inc. v. Guagliardo, 210 F. Supp. 2d 1138, 1152 (C.D. Cal. 2001) (communication *merely* informing third-party of pendency of litigation permissible).

Finally, although Carmichael Lodge does not press this point, it could be argued that the recipients of the letter (other lodges) had an financial interest in the litigation, because proceeds from the guides purchased from Carmichael Lodge are disbursed, at least in part, to the Elks National Foundation.[8] While this connection might establish that the recipients were not "strangers [who] had

---

[8] The letter states that proceeds from the guides "are deposited into a restricted account for annual disbursement to ENF [Elks National Foundation]" among other recipients.

16

no interest in the action," <u>Susan A. v. County of Sonoma</u>, 2 Cal. App. 4th 88, 95 (1991), neither does it suffice to show that they are "nonparties with a substantial interest in the proceeding," <u>id.</u> (citing <u>Costa v. Superior Court</u>, 157 Cal. App. 3d 673, 678 (1984)).

In conclusion, the court finds that Carmichael Lodge has not demonstrated a sufficient functional nexus between the letter and the objects of this action. Accordingly, the court finds that the privilege does not bar any of Leonard's counterclaims.[9]

### IV. Conclusion

For the reasons set forth above, the motion to dismiss defendant's counterclaim is denied.

IT IS SO ORDERED.

DATED: April 9, 2008.

/s/ Lawrence K. Karlton
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[9] The court also finds unpersuasive Carmichael Lodge's alternate argument that the claims at issue fail to set forth sufficient facts, particularly now that the full text of the letter at issue is before the court.

17