IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CARMICHAEL LODGE NO. 2103,
BENEVOLENT AND PROTECTIVE ORDER
OF ELKS OF THE UNITED STATES OF
AMERICA, a California Corporation,

        Plaintiff,                        No. CIV S-07-2665 LKK GGH

    vs.

RONALD L. LEONARD dba RV TRAVEL
GUIDES, et al.,

        Defendants.               ORDER
_____/

        Plaintiff's motion to compel discovery was heard on March 12, 2009. Present in court for plaintiff and counterdefendant was Pamela Bertani. Mark Leonard appeared for defendant and counterclaimant. Discovery deadline is April 30, 2009. Plaintiff seeks an order to compel further responses to Interrogatories, Requests for Admissions, and Requests for Production of documents. The parties filed the joint stipulation required by Local Rule 37-251. However, because the joint statement does not in any way reference specific document requests which are at issue, the court finds that no further document request response need be made.

        This is a copyright infringement action where Carmichael Lodge No. 2103, Benevolent and Protective Order Of Elks of the United States of America ("Carmichael" or

1

plaintiff) claims that Ronald Leonard (defendant) claimed ownership of plaintiff's travel guides without permission, while Leonard claims that plaintiff infringed his copyright over the travel guides.

The travel guides, which lay out campground and other travel information to be used by Elks members, were originally created by a person named "David," who more or less donated his work (the David Guides) to the Carmichael Elks. Plaintiff's part of the joint stipulation states that plaintiff owned copyrights in Elkdom Travel Guides I, II, and III, the '753, '754, and '819 copyrights respectively. In 1997, approximately 15 years after the creation of the David Guides, defendant Leonard, an Elks member began to assist in the updates of these guides. Leonard claims that in 1998 he began updating and reformatting the guides, which he calls the Leonard Guides, and sometime thereafter gave plaintiff a license to publish and sell his guides under the titles, "Elkdom Travel Guides I-III."

Leonard alleges that after he was denied control over the guides in or about 2007, he unilaterally decided to claim ownership over them by submitting his own copyright registration applications without plaintiff's knowledge. Leonard claims he ultimately received copyright registrations over these guides. On March 31, 2007, defendant ceased his grant of permission to plaintiff to publish and sell his guides. Plaintiff terminated Leonard's membership in the Elks in August, 2008. The counterclaims are for copyright infringement, libel per se, false advertising, and unfair business practices.

The discovery requests at issue are plaintiff's first set of interrogatories, and first set of requests for admissions. Although defendant provided supplemental responses to the interrogatories and RFAs, which plaintiff has reviewed, plaintiff seeks further responses to all of the requests. The sought discovery is not about ascertainment of information, but rather appears to be designed to lock Leonard into a litigation position from which he cannot extricate himself. This is not necessarily an inappropriate use of discovery; however, it leads to disputes such as that before the undersigned.

INTERROGATORIES

Interrogatories Nos. 1-6

Plaintiff contends that defendant's responses purport to rewrite the interrogatory and then answer the re-written question. Requests 1-6 seek information regarding authorship of the three volumes entitled Elkdom Travel Guide I, II, and III, which is defined in the "Definitions and Instructions" section of their interrogatories. For example:

INTERROGATORY No. 1: Is Ron Leonard the author of Elkdom Travel Guide I ? Please explain.

INTERROGATORY No. 2: Did Ron Leonard prepare any derivative works of Elkdom Travel Guide I? If so, please explain.

The instructions define "Elkdom Travel Guide I" as that work identified in the "'753 copyright and all derivative works thereof," which in turn is identified as that work authored by the Davids, effective date of registration July 28, 1988. Exhibit D at 4.

Defendant initially objected to these interrogatories on the basis that they were vague and ambiguous. Most of the objection went to a lack of understanding as to the precise travel guide at issue in the interrogatory and the undefined term of derivative works. After meet and confer sessions, and a supply by plaintiff of precise copies of documents to which the interrogatories referred, supplemental denials of authorship were entered by Leonard with the exception of Elkdom Travel Guide III for which Leonard admitted authorship to some degree. Exhibit M.

The court will not require further responses as the interrogatories are inherently ambiguous, if not unintelligible. Taking a step back, one sees that the interrogatory inquires of Leonard if he is the author of an Elkdom Travel Guide when the instructions and definitions *specifically instruct that the Davids are the authors*. How can one be asked if he is the author when he is also instructed that he is not the author. Perhaps, plaintiff intends to inquire that although the Davids are listed as authors on the '753 patent, Leonard could claim authorship in

reality.  If plaintiff meant to ask that question, plaintiff needed to be much more clear.  In any event, when the specific travel guide document was presented to Leonard during this discovery process, he made his denials and admissions – what else could plaintiff really require?

Moreover, defendant is correct that asking if some one is the author of "all" derivative works in general puts the responder in the impossible position of guessing what derivative works are in the mind of the inquirer.  A derivative work is one based on a preexisting work.  See <u>Jarvis v. K-2, Inc.</u>, 486 F.3d 526, 531 (9th Cir. 2007).  The question presumes the existence of derivative works and presumes that the responding party would have knowledge of "all" derivative works – even if one could agree that a universe of related works would be considered derivative.

The responses to these interrogatories also put in issue the blanket or boilerplate privilege objections.  Because the court finds the initial interrogatories vague for the reasons asserted, and sufficient responses were set forth in the supplemental filings, the court will not reach the impropriety of the asserted privilege assertions.  No further response is necessary.

<u>Interrogatories Nos. 8-9, 12-13, 17</u>

Plaintiff contends that defendant objected to this group of interrogatories as vague and ambiguous and then proceeded to assign his own definition to the terms, despite plaintiff's inclusion of definitions which are the dictionary definitions. (The court has read the instructions three times and cannot find the definitions of the terms objected to, such as "layout," "blocked layout," "format," and ""textual information.").  Plaintiff cites <u>L.H. v. Schwarzenegger</u>, for the proposition that "based on the previously recited broad definition of "policy" which was not objected to by defendants, defendants' apparent refusal to acknowledge this definition in framing their responses does not show a good faith attempt to respond."  2007 WL 2781132 (E.D. Cal. 2007).

According to defendant, many of these interrogatories reference "layout," "blocked layout," "format" and "textual information," which defendant claims are vague and

ambiguous terms in the context of copyrighted work. Rather than refuse to answer, defendant construed these terms in relation to the contents of the guides. Defendant argues that L.H. is distinguishable because the responding party there did not object to the definition or provide its own definition, and further, plaintiff failed to inform the court that it was an unpublished case.

The following are the interrogatories at issue:

Number 8 - Did Ron Leonard originally design the format of RV Travel Guide I, to the extent that the format presents textual information arranged adjacent to maps depicting the location of Elks Lodges in the Pacific Coast States? If so, please explain.

Number 9 - Did Ron Leonard originally design the layout of RV Travel Guide I, to the extent that the layout incorporates maps arranged contiguously to textual information, presented in blocked layout, regarding Elks Lodge activities and Elks Lodge RV facilities for Elks Lodges located in the Pacific Coast States? If so, please explain.

Number 12 - Did Ron Leonard originally design the format of RV Travel Guide II, to the extent that the format presents textual information arranged adjacent to maps depicting the location of Elks Lodges in the Midwestern States?

Number 13 - Did Ron Leonard originally design the layout of RV Travel Guide II, to the extent that the layout incorporates maps arranged contiguously to textual information, presented in blocked format, regarding Elks Lodge activities and Elks Lodge RV facilities for Elks Lodges located in the Midwestern States? Explain in detail.

Number 17 - Did Ron Leonard originally design the format of RV Travel Guide III, to the extent that the format incorporates maps arranged contiguously to textual information, presented in blocked layout, regarding Elks Lodge activities and Elks Lodge RV facilities for Elks Lodges located in the Southeastern States? Explain in detail.

The court will give one response as an example, as all the disputed responses follow a similar format (the undersigned understands quite well what the term means without a formal definition).

Response No. 8- Leonard objects to this interrogatory on the ground that it is vague and ambiguous. Leonard further objects that this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege, attorney work-product doctrine, and information that contains Leonard's proprietary information and trade secrets (sic). Subject to and without waiving the foregoing objections, Leonard responds as follows: Leonard objects to this interrogatory as posed because the terms "format" and "textual information" are vague and ambiguous. Construing "format" as the arrangement and content of RV Travel Guide I, yes. For each state in RV Travel Guide I, Leonard prepared a map of the state with the approximate locations of each Elk Lodge listed in the guide. Each Elks Lodge within a particular state that offers RV parking is listed in alphabetical order, by city name, with an average of five lodges per page, displayed in portrait layout. For most lodges, a map, prepared by Leonard, appears to the right of the information for a particular lodge. Information for Elks Lodges in a particular state that do not offer RV parking are listed at the end of each state's section, also in alphabetical order.

Exhibit M.

First, there is no prohibition in citing "unpublished" *district court* opinions (unless a local rule so provides). They are either persuasive to the issue at bar, or they are not. District court opinions, published or not, do not set binding precedent for other cases, as one judge in a district court, by publishing an opinion in one case, cannot bind another district court judge (or even himself) in a different case by the mere act of publication. Circuit court cases are, of course, differently viewed.

Secondly, the <u>L.H. v. Schwarzenneger</u> case is not apposite. There are no express definitions given for the terms at issue. Plaintiff's argument that the context or wording of the interrogatory supplies an implicit definition is not persuasive. This is not to say, however, that Leonard's purported confusion as to commonly known terms is persuasive either. <u>See</u> <u>below</u>.

Thirdly, boilerplate privilege objections are not permissible. It is somewhat of an urban legend that good lawyering always requires an introductory, general assertion that information/materials subject to a privilege (whatever that unidentified information or those materials may be) are not being utilized or produced. Counsel then believe they have protected their client by making the response unclearly based such that additional information can later be produced, or have protected their client from having to produce privileged information/material.

6

1   In fact, and in law, the opposite is true.  Unless there really exists some information subject to
2   privilege, *which should be then identified in a privilege log*, one may not make the privilege
3   assertion "just in case."  The party receiving such a response is in the dark as to what may, or
4   may not, actually have been withheld.  Assertion of privilege is a serious matter.  If there is
5   indeed no identifiable, privileged information/material, it is an abuse of discovery process to
6   suggest that such exists.  Counsel may well be limited at trial to the information contained in an
7   interrogatory, and belated, attempted introduction of new information heretofore not produced
8   under some rubric of "privileged" will not be permitted.  On the other hand, assuming that some
9   identifiable, privileged information exists, one does nothing to preserve the privilege by simply
10  setting forth a generalized, i.e., boilerplate, objection.   If the privilege is worth preserving, it is
11  worth being identified in a privilege log – and the Federal Rules *require* such.  Fed. R. Civ. P. 26
12  (b)(5).  See also Eureka Financial v. Hartford Accident and Indemnity, 136 F.R.D. 179 (E.D.
13  Cal. 1991).  A specific log entry is necessary because there is no realistic way of setting about to
14  challenge on their merits mistaken, blunderbuss, unidentified assertions of privilege.

Therefore, any privilege which actually exists with respect to the above interrogatories has been waived in that no proper assertion has been made even after meet and confers and the hearing on this motion. Eureka, supra.  The privileged information, if it exists at all, shall be set forth in a supplemental response to plaintiff no later than April 30, 2009, if in fact the privileged information changes/modifies the given response.  If no change or modification need be made, Leonard shall file and serve a statement to that effect.

The general objections made in the supplemental responses to these interrogatories are overruled.  When the response on the merits is finally given (assuming the non-existence of privileged material which would change the response), it is entirely acceptable.

\\\\\

\\\\\

\\\\\

7

REQUESTS FOR ADMISSIONS

The Requests for Admissions at issue are : <u>4, 5, 8, 9, 10, 11, 12, 13, 15, 24, 27, 28, 29, 30, 31, 32, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 76</u>.

Requests for Admission narrow issues for trial. Fed. R. Civ. P. 36(a); <u>United Coal Companies v. Powell Const. Co.</u>, 839 F.2d 958, 967 (3d Cir.1988); <u>Dubin v. E.F. Hutton Group, Inc.</u>, 125 F.R.D. 372, 375 (S.D.N.Y.1989). The "[p]urpose of [the] rule . . . is to expedite trial by removing essentially undisputed issues, thereby avoiding time, trouble and expense which otherwise would be required to prove issues." <u>Burns v. Phillips</u>, 50 F.R.D. 187, 188 (D.C.Ga.1970); <u>see</u> also <u>Asea, Inc. v. Southern Pacific Transportation Co.</u>, 669 F.2d 1242, 1245 (9th Cir.1981). The responding party should admit or deny the request. A denial should "specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter. A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify an answer or deny only a part of the matter of which an admission is requested, the party shall specify so much of it as is true and qualify or deny the remainder." Fed. R. Civ. P. 36(a). A party, however, is not required to speculate about a request that contains genuinely vague or ambiguous statements. See <u>Dubin</u>, 125 F.R.D. at 375-76; 7 James Wm. Moore et al., Moore's Federal Practice § 36.10[6] (3d ed.1997).

Numerous requests for admission are at issue; the court repeats one request with its supplemental response (see Exhibit N):

Request for Admission No. 4:
    Admit that the format of ELKDOM Travel Guide I includes maps depicting the location of Elks lodges located in the Pacific Coast States.

Objection and Response to Request No. 4:
    Leonard objects to this request for admission as vague and ambiguous, including but not limited to, the term "format." Leonard further objects to this request for admission to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. To the extent that this request for admission seeks such privileged or confidential documents, Leonard will not respond to it.

> Subject to and without waiving the foregoing objections, Leonard responds as follows: Leonard admits the versions of ELKDOM Travel Guide I that accompanied Carmichael Elks" counsel's January 16, 2009 letter, exhibits 1 and 2, contain contact and, for some lodges, RV facility information, and in some cases maps which appear beneath the information, for Elks lodges in the Pacific Coast States listed in alphabetical order and displayed in landscape layout....

Plaintiff contends that defendant has provided long winded explanations which are non-responsive and confusing, and attempts to convert the RFAs into interrogatories. Defendant then responds to the RFA as he has interpreted it without responding to the RFA propounded by plaintiff. After a meet and confer, plaintiff then provided duplicate deposit copies of the guides and definitions for terms which defendant had claimed were vague and ambiguous (despite defendant's experience with desktop publishing for which the terms, "textual, graphic, blocked, and format,") are commonly used. Even after defendant had this information to help him with his supplemental responses, plaintiff contends that defendant made vague and ambiguous objections and included a confusing hodgepodge of information that plaintiffs' requests do not seek, and that the supplemental responses are overly non-responsive and verbose. Compare Bertani Decl., Exs. H and N.

Defendant cites case law to support qualifying an answer to an RFA that is vague and ambiguous. Defendant contends that the same basic problem that was inherent in the interrogatories is found here also: the definition of "Elkdom Travel Guide." For defendant to "admit or deny would depend upon exactly which works were included within the universe of works encompassed by the definition." Plaintiff did provide copies to defendant which clarified this ambiguity, but still remaining, so it is asserted, is the ambiguity over the terms such as "textual information" and "blocked layout." Defendant went ahead and admitted the specific textual and graphic information that appears in the guides provided to him. Therefore, the argument continues, defendant's responses were properly qualified as to the type of information to which he can truthfully admit.

\\\\\

The "format" of the response follows the same as that for the interrogatories: general objections, boilerplate assertions of privilege, a supplemental response on the merits following plaintiff's production of the specific documents for Leonard's review to which response is requested.

The general objections, e.g., vague and ambiguous, made in the supplemental responses are overruled. The privilege assertions are again improper either because the privileged information on which a complete response was withheld was not identified, or the privilege assertions are meaningless boilerplate, and the response was not really affected at all by the assertion of privilege. However, the substance of the response when finally made meets the requirements of Fed. R. Civ. P. 36, assuming that the response would not be changed based on the unidentified "privileged material."

Leonard must provide a supplemental response by April 30, 2009 concerning whether any of the supplemental responses to the requests for admission at issue would change, or become modified, based on the deficient assertion of privilege. If the responses would change/become modified, the new response shall be set forth in full.

CONCLUSION

In accord with the above discussion and with the court's oral orders at hearing, IT IS ORDERED that:

Plaintiff's motion to compel further responses to requests for admissions, interrogatories, and requests for production of documents (docket #29) is denied except insofar as further response to the interrogatories and admissions need be made on account of waived privilege assertions. Any such response must be made by April 30, 2009.

DATED: 04/23/09

/s/ Gregory G. Hollows

U. S. MAGISTRATE JUDGE

GGH/076
Carmichael2665.dsy.wpd